IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| VALARY DREYER, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BODY CONTOUR CENTERS, LLC, | ) | |
| d/b/a SONO BELLO | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Valary Dreyer ("Plaintiff" or "Ms. Dreyer") respectfully submits the following Complaint:

**INTRODUCTION**

1. This is an action for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

2. Plaintiff was terminated after she escalated and reported serious concerns that a high-ranking manager was engaging in inappropriate and sexually harassing conduct toward a subordinate nurse and after she opposed that misconduct through internal complaints.

3. Plaintiff seeks declaratory and injunctive relief, equitable relief, compensatory and punitive damages, and an award of attorneys' fees and costs.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331.

1

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in this District and Defendant conducts business in this District.

## THE PARTIES

6. Plaintiff is an individual residing in Charleston County, South Carolina.

7. Defendant Sono Bello is an employer within the meaning of Title VII and, upon information and belief, employs 15 or more employees and is engaged in an industry affecting commerce.

8. Defendant maintains and operates a facility in Charleston, South Carolina, including at or around 4105 Faber Place Drive, Suite 100, Charleston, South Carolina 29405.

## CONDITIONS PRECEDENT

9. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

10. The EEOC issued a Notice of Right to Sue on December 10, 2025.

11. Plaintiff filed this action within ninety (90) days of receipt of the Notice of Right to Sue.

12. All conditions precedent to the institution of this action have been satisfied.

## FACTUAL ALLEGATIONS

13. Plaintiff began employment with Sono Bello in or about August 2024 as an RN Lead Clinician at Sono Bello's Charleston clinic.

14. Plaintiff reported to Practice Manager Stuart May ("May"), who reported to Area Leader Sarah Levitt ("Levitt").

15. It was well known in the workplace that May—who was married with children—was inappropriately focused on and flirted with a nurse, Moriah Richards ("Richards").

16. During the week of November 11, 2024, Richards approached Plaintiff privately, extremely anxious, and requested that Plaintiff serve as a chaperone for future meetings with May because Richards felt uncomfortable due to May's conduct and comments.

17. Richards showed Plaintiff a list (kept on Richards' phone) documenting May's inappropriate behavior, including sexual comments and behavior such as staying late so he could walk out with Richards when she was among the last employees to leave the clinic.

18. Richards further expressed fear and anxiety about May's likely reaction to events in Richards' personal life, including an anticipated engagement around the holidays—reflecting the seriousness and impact of May's conduct on Richards' workplace experience.

19. Based on Richards' report and Plaintiff's responsibilities as RN Lead Clinician, Plaintiff recognized that the concerns needed to be escalated to higher management.

20. On November 18, 2024, Plaintiff had a scheduled one-on-one meeting with Area Leader Levitt. During this meeting, Levitt praised Plaintiff's performance, describing Plaintiff as "fantastic," stating that everyone liked Plaintiff, and that Plaintiff was the "glue" that held the clinic together, and discussed additional future responsibilities for Plaintiff.

21. At the conclusion of that same meeting, Plaintiff reported to Levitt her concerns regarding May's inappropriate behavior toward Richards and informed Levitt that Richards had requested that Plaintiff chaperone meetings with May.

22. Levitt immediately dismissed Plaintiff's concerns.

23. Between November 18–20, 2024, an RN trainer, Alexa Smith ("Smith"), was present at the clinic. Smith was known within the organization as a well-regarded traveling trainer.

3

24. On November 19, 2024, Smith asked Plaintiff why May appeared to be so controlling over Richards. Plaintiff indicated that May had a "crush" on Richards, but could not elaborate at that time.

25. On November 20, 2024, Plaintiff met with Smith privately, became visibly upset, and told Smith that Plaintiff had never made a report like this before but needed to report May's inappropriate behavior toward Richards, including Richards' request for a chaperone and Richards' fear of what May might "say or do."

26. Smith responded that these were serious concerns that needed to be reported to Levitt. Plaintiff explained she had already reported the concerns to Levitt and that Levitt had dismissed them.

27. Plaintiff reasonably understood that Smith would escalate the report to leadership given the seriousness of the conduct described.

28. After Plaintiff opposed and reported May's conduct, Plaintiff noticed an immediate and marked shift in the way she was treated by Levitt, May, and Assistant Practice Manager Cassandra Mayott ("Mayott"), including cold and standoffish treatment.

29. On December 4, 2024—approximately two weeks after Plaintiff's report to Smith—Plaintiff was called into a meeting with Levitt (remote/video), May, and Mayott.

30. During the meeting, Levitt had May and Mayott step out, and Levitt became extremely aggressive toward Plaintiff.

31. Levitt stated words to the effect of: "Do you understand what you have done by making this report?! Do you understand what you have accused an upstanding man of doing?!"

32. Levitt further stated that if it were up to her she would be firing Plaintiff "on the spot," but claimed May and Mayott had decided to give Plaintiff "two weeks to show improvement."

33. Levitt instructed Plaintiff never to report her concerns again and not to speak about May, and directed Plaintiff to immediately call Levitt if the concerns were raised or discussed again.

34. Levitt then brought May and Mayott back into the meeting, and May informed Plaintiff she was being placed on a two-week probation period to "show improvement."

35. The probation was unjustified and was retaliatory discipline directly tied to Plaintiff's protected opposition activity regarding sexual harassment.

36. Plaintiff was not given the full two weeks to "improve." Three working days later, on December 9, 2024, Defendant terminated Plaintiff's employment.

37. Defendant claimed Plaintiff was terminated for "ineffective leadership" and "not being a team player," which—under the circumstances, timing, and Levitt's statements—were pretextual and a direct reference to Plaintiff's protected reports and opposition.

38. Defendant's retaliatory conduct caused Plaintiff to suffer loss of income and benefits, emotional distress, inconvenience, humiliation, and other damages in an amount to be proven at trial.

## COUNT I
### Retaliation in Violation of Title VII

39. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40. Title VII prohibits an employer from retaliating against an employee because the employee opposed practices made unlawful by Title VII or participated in protected activity.

41. Plaintiff engaged in protected activity when she reported and opposed May's inappropriate conduct toward Richards, including escalating those concerns to Levitt and then to Smith when Levitt dismissed them.

42. Defendant subjected Plaintiff to materially adverse actions, including retaliatory discipline/probation and termination.

43. There is a causal connection between Plaintiff's protected activity and the adverse actions, including but not limited to the close temporal proximity between Plaintiff's reports and the probation and termination; Levitt's explicit statements expressing outrage about Plaintiff's report and indicating she would have fired Plaintiff "on the spot"; Levitt's directives that Plaintiff "never" report concerns again and not speak about May; the shifting and hostile treatment Plaintiff experienced after she made her report; and Defendant's pretextual stated reasons for termination (including purported "ineffective leadership" and "not being a team player"), which—under the circumstances and timing—were tied to Plaintiff's protected conduct.

44. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and will continue to suffer damages, including back pay, lost benefits, emotional distress damages, and other compensatory damages, plus attorneys' fees and costs.

45. Defendant acted intentionally, maliciously, or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under Title VII.

**WHEREFORE,** Plaintiff demands a TRIAL BY JURY and the following relief:

(a) declare that Defendant has violated Plaintiff's rights under the federal statute and state laws listed above;

6

(b) permanently enjoin Defendant from violating, in the future, Plaintiff's rights under the federal statute and state laws listed above;

(c) award Plaintiff full back pay, including all lost pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(d) award Plaintiff prejudgment interest as required by law;

(e) award Plaintiff compensatory damages for emotional pain and suffering in an amount to be determined by the enlightened conscience of a jury;

(f) award Plaintiff front pay, including all lost future pay and benefits, raises, cost of living increases, retirement benefits, and all other lost benefits and compensation reducible to a dollar amount;

(g) award Plaintiff punitive damages against Defendant sufficient to punish it for its unlawful conduct and deter it from repeating such conduct in the future, as determined by the enlightened conscience of a jury;

(h) award Plaintiff reasonable attorneys' fees and expenses; and

(i) grant such additional relief as may be just.

Respectfully submitted, this 3rd day of March, 2026.

*s/ Townes B. Johnson III*
Townes B. Johnson III
Federal Bar No. 10046
Townes B. Johnson III, LLC
PO Box 9246
Greenville, SC 29604
(864) 757-4899
tjohnson@sc.legal

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
LEE MEIER BURKE, LLC
695 Pylant Street N.E., Suite 105
Atlanta, Georgia 30306
Telephone: (404) 301-8973
jlee@leemeierburke.com

**COUNSEL FOR PLAINTIFF**
